**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 7 |
| JASON K. KALOYANIDES, | ) | Case No. 21-10644-CJP |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| B.C. PRODUCE, INC., COMMUNITY- | ) | |
| SUFFOLK, INC., JOHN CERASUOLO, | ) | |
| INC., LISITANO PRODUCE, INC., | ) | AP No. 21-01085-CJP |
| J. BONAFEDE CO., INC., and BOSTON | ) | |
| TOMATO & PACKAGING, LLC, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON K. KALOYANIDES, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT**

Before me are cross-motions for partial summary judgment on the non-dischargeability

of alleged claims for defalcation while acting in a fiduciary capacity within the meaning of 11

U.S.C. § 523(a)(4)[1] that require me to examine the intersection of trusts created under the

Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq*. ("PACA") and whether such

trusts satisfy the "fiduciary capacity" requirement under § 523(a)(4).

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended (the "Bankruptcy Code" or "Code").

The plaintiffs, B.C. Produce, Inc., Community-Suffolk, Inc., John Cerasuolo Co., Inc., J. Bonafede Co., Inc., Lisitano Produce, Inc., and Boston Tomato & Packaging, LLC (collectively, the "Plaintiffs"), filed a four-count complaint [Dkt. No. 1] (the "Complaint") against the defendant, Jason K. Kaloyanides (the "Defendant" or "Kaloyanides"), containing the following counts: (a) Count I (determination of the amounts due to each of the Plaintiffs); (b) Count II (violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11); (c) Count III (nondischargeability under § 523(a)(2)); and (d) Count IV (nondischargeability under § 523(a)(4)).  The parties stayed discovery while they pursued cross-motions for partial summary judgment on certain discrete legal questions related to Count IV of the Complaint as to whether a trust arising under PACA pursuant to 7 U.S.C. § 499e(c) (a "PACA Trust") creates the kind of fiduciary relationship that can give rise to a nondischargeable debt under § 523(a)(4) and, if so, whether such debts subject to a PACA Trust are *per se* nondischargeable under § 523(a)(4).

Pursuant to the *Plaintiffs' Cross Motion for Partial Summary Judgment* [Dkt. No. 27] and supporting memorandum of law [Dkt. No. 28] (together, the "Plaintiffs' Motion"), the Plaintiffs seek judgment that the debts owed by Kaloyanides to the Plaintiffs due to the sale of produce subject to a PACA Trust are nondischargeable under § 523(a)(4). The Defendant conversely seeks judgment in his favor that debts subject to a PACA Trust are not excepted from discharge under § 523(a)(4) per his *Cross-Motion for Partial Summary Judgment* [Dkt. No. 31] and supporting memorandum of law [Dkt. No. 32] (the "Defendant's Motion," together with the Plaintiffs' Motion, the "Motions").  The Plaintiffs contend partial summary judgment is appropriate because their sales and deliveries of wholesale quantities of produce to Atlas Produce and Provisions LLC, an entity which they assert Kaloyanides controlled, were subject to a PACA Trust arising pursuant to 7 U.S.C. § 499e(c), and that such PACA Trust satisfies the

requirements for the fiduciary relationship under § 523(a)(4).  Pls.' Mot., at 2–3.  The Plaintiffs

assert that Kaloyanides committed a defalcation while acting in a fiduciary capacity for the

purposes of § 523(a)(4) by failing to pay amounts owed to Plaintiffs as to which a PACA Trust

was established.  *See id*.  In response, Kaloyanides seeks partial summary judgment that the

PACA debts are dischargeable because PACA does not create a trust that results in a "fiduciary

capacity" sufficient to meet the requirements of § 523(a)(4) and that, even if a PACA Trust did

create a sufficient fiduciary relationship, the mere nonpayment under a PACA Trust does not

constitute a "defalcation" within the meaning of § 523(a)(4).  Def.'s Mot., at 2.  For purposes of

the Motions, the Defendant assumes, but does not otherwise admit, that the Plaintiffs hold valid

claims that are entitled to the protections of PACA and that he could be held personally liable for

these claims as the managing member of the company that contracted with the Plaintiffs.  *Id.* at

3.

    The Parties filed a *Joint Request for Stay of Proceedings Regarding the Parties' Cross*

*Motions for Partial Summary Judgment* [Dkt. No. 46] and I stayed determination of the Motions

pending the result of a petition for writ of certiorari for a case decided by the United States Court

of Appeals for the Eleventh Circuit involving PACA and § 523(a)(4), *Spring Valley Produce,*

*Inc. v. Forrest (In re Forrest)*, 47 F.4th 1229 (11th Cir. 2022).  The United States Supreme Court

denied the petition, *cert. denied sub nom.*, *Spring Valley Produce, Inc. v. Forrest*, 143 S. Ct.

2579 (2023), and the Motions are ripe for determination.

    For the reasons discussed below, I conclude that PACA does not create a trust that results

in a "fiduciary capacity" sufficient to meet the requirements of § 523(a)(4), and I will enter

partial summary judgment in favor of Kaloyanides on Count IV of the Complaint.

## I.      JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 157(a) and (b)(1) and

1334(b) and Local Rule 201 of the United States District Court for the District of Massachusetts.

A determination of the dischargeability of a debt under § 523(a)(4) is a core proceeding.  *See* 28

U.S.C. § 157(b)(2)(I).

## II.     LEGAL STANDARDS

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to this adversary

proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment requires the

movant to show that "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056.

In determining cross-motions for summary judgment, courts "must resolve all genuine factual

disputes in favor of the party opposing each such motion and draw all reasonable inferences

derived from the facts in that party's favor," *Atlantic Fish Spotters Ass'n v. Evans*, 321 F.3d 220,

223 (1st Cir. 2003), by evaluating "each motion separately, drawing inferences against each

movant in turn," *E.E.O.C. v. Steamship Clerks Union*, *Loc. 1066*, 48 F.3d 594, 603 n.8 (1st Cir.

1995).  In this case, for purposes of the Motions only, the parties agree that no facts are disputed

that are material to the narrow questions presented.  Def.'s Mot, at 3–4.

### B. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from an individual debtor's discharge any debt "for fraud or

defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. §

523(a)(4).  The creditor seeking to have its debt excepted from discharge bears the burden of

proof by a preponderance of the evidence.  *See Grogan v. Garner*, 498 U.S. 279, 286 (1991);

*Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9, 17 (1st Cir. 2002). An exception to discharge under § 523 should be strictly and "narrowly construed in furtherance of the Bankruptcy Code's fresh start policy." *In re Baylis*, 313 F.3d at 17 (citations and internal quotations omitted); *see also Stowe v. Bologna (In re Bologna)*, 206 B.R. 628, 635 (Bankr. D. Mass. 1997) (recognizing that exceptions to discharge should be construed narrowly to offer a fresh start to honest debtors).

Courts in the First Circuit have adopted a three-part test to analyze whether debts are nondischargeable under § 523(a)(4). *See, e.g.*, *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012). Courts must determine whether "(1) the debt results from a fiduciary's . . . defalcation under [their fiduciary relationship]; (2) the debtor acted in a fiduciary capacity with respect to that [relationship]; and (3) the debt was caused by a . . . defalcation within the meaning of bankruptcy law." *Stallworth v. McBride (In re McBride)*, 512 B.R. 103, 113 (Bankr. D. Mass. 2014) (citing *In re Fahey*, 482 B.R. at 687); *see also Jones v. Dyer (In re Dyer)*, No. 16-40063-CJP, 2018 WL 812993, at *4 (Bankr. D. Mass. 2018); *A.J. Rinella & Co., Inc v. Bartlett (In re Bartlett)*, 397 B.R. 610, 619 (Bankr. D. Mass. 2008).

**C. PACA Trusts**

Congress enacted PACA in 1930 to regulate the sale of perishable commodities and promote fair trading practices in the produce market. *See* H.R. Rep. No. 98-543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. Under PACA, it is unlawful for a produce buyer to fail to make prompt payment to a licensed produce seller for a shipment of produce. 7 U.S.C. § 499b(4). To address produce buyers granting a security interest in their unpaid produce to other creditors, Congress added § 499e(c) to Title 7 in 1984, which creates a statutory trust in favor of produce sellers on the inventories of commodities sold to a buyer, the products derived

therefrom, and the proceeds of sales from such commodities and products.  H.R. Rep. No. 98-

543, at 4, reprinted in 1984 U.S.C.C.A.N. at 407.

Section 499e(c)(2) of PACA provides

> [p]erishable agricultural commodities received by a commission merchant, dealer,
> or broker in all transactions, and all inventories of food or other products derived
> from perishable agricultural commodities, and any receivables or proceeds from
> the sale of such commodities or products, shall be held by such commission
> merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers
> of such commodities or agents involved in the transaction, until full payment of
> the sums owing in connection with such transactions has been received by such
> unpaid suppliers, sellers, or agents. . . .

7 U.S.C. § 499e(c)(2).

A PACA Trust is automatically created as long as the produce buyers receive the

produce, but the produce sellers will lose the trust benefits unless they comply with statutory

notice requirements, such as including language to provide notice of their intent to preserve the

trust in their "ordinary and usual billing or invoice statements."  7 U.S.C. § 499e(c)(3), (4); 7

C.F.R. § 46.46(c), (f); *E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 102 (Bankr. E.D.N.Y.

2009).  As both the Plaintiffs and Kaloyanides acknowledge, all different trust assets are

preserved in the PACA Trust as a "nonsegregated 'floating' trust," 7 C.F.R. § 46.46(b), which

"permits the commingling of trust assets without defeating the trust," *Endico Potatoes, Inc. v.

CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995); *see also* Pls.' Mot. at 7; Def.'s

Mot. at 5–8.  Through the PACA Trust, the sellers of the commodities maintain a right to recover

against the purchasers that is superior to all creditors, including secured creditors.  *See* 7 U.S.C. §

499e(c)(l); *see, e.g.*, *Tom Lange Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit &

Produce Co.)*, 12 F.3d 806, 809 (8th Cir. 1993); *Consumers Produce Co. v. Volante Wholesale

Produce, Inc.*, 16 F.3d 1374, 1379 (3d Cir. 1993).

A PACA claim can be filed by an unpaid supplier, seller, or agent of perishable agricultural commodities against commission merchants, dealers, or brokers who have not made timely payments on such delivered commodities.  The statute defines a "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce . . . ."  7 U.S.C. § 499a(b)(6).  Each licensee, dealer, merchant, and broker has a duty to maintain the trust in a manner such that "assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section 2 of the Act . . . ."  7 C.F.R. § 46.46(d)(l) (citing 7 U.S.C. § 499b).

Section 499e(a) of Title 7 provides that, "if any commission merchant, dealer, or broker violates any provision of section 499b of [Title 7] he shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a).  "'An individual who is in the position to control [PACA] trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act.'"  *Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1, 8–9 (1st Cir. 1999) (quoting *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F. Supp. 346, 348 (S.D.N.Y. 1993)); *cf.* 7 U.S.C. § 499a(9) *and* 7 C.F.R. § 46.2(ff) (defining persons "responsibly connected" under PACA); *see also Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (determining that "[a]n individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty"); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) (acknowledging "that individual shareholders, officers, or directors of a corporation who are in a

7

position to control PACA trust assets, and who breach their fiduciary duty to preserve those

assets, may be held personally liable under the Act").

## III.   ANALYSIS

### A. Whether Fiduciary Relationship Exists

What constitutes "fiduciary capacity" within the meaning of § 523(a)(4) is a matter of

federal law. *See In re Fahey*, 482 B.R. at 688; *Weiss v. Fautz (In re Fautz)*, 636 B.R. 553, 570

(Bankr. D. Mass. 2022). The term "fiduciary" is narrowly construed, so the broad definition of

fiduciary relationship outside bankruptcy law is inapplicable in the context of exception from

discharge under § 523(a)(4). *See Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397

F. 3d 386, 391 (6th Cir. 2005) (construing "fiduciary capacity" for purposes of (a)(4) "more

narrowly than the term is used in other circumstances."); *In re Fahey*, 482 B.R. at 688 ("[T]he

broad definition of fiduciary—a relationship involving trust, confidence, and good faith—is

inapplicable in the dischargeability context." (internal quotations and citations omitted)).

The substance of a transaction, instead of its form, determines whether the transaction

falls within the "strict and narrow" fiduciary relationship for purposes of § 523(a)(4). *See Davis

v. Aetna Acceptance Co.*, 293 U.S. 328, 333–34 (1934). Courts have held that "fiduciary

capacity" in the context of § 523(a)(4) only applies to a fiduciary relationship arising out of an

express or technical trust, and not to trusts implied by contract or imposed as a remedy for

wrongdoing. *See id.* at 333 (collecting Supreme Court cases); *but see In re Baylis*, 313 F.3d at

17 n.3 (in a case where whether a fiduciary capacity arises was not at issue, citing *Davis* and

questioning in dicta whether "the exception for fiduciary capacity applies only to express trusts,

and not to equitable trusts created by the debtor's conduct . . . continues to be so[,] concluding it

"is in doubt"). The fiduciary relationship must predate and exist apart from the debtor's

defalcation that created the debt. *See Davis*, 293 U.S. at 333. Therefore, "constructive or resulting trusts, which generally serve as a remedy for some dereliction of duty in a confidential relationship, do not fall within the § 523(a)(4) exception because the act which created the debt simultaneously created the trust relationship." *See Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006) (internal quotations and citation omitted).

Courts are divided as to whether a PACA Trust satisfies the requirements of an express or technical trust and establishes the fiduciary relationship required by § 523(a)(4). *Compare Alliance Shippers, Inc. v. Guarracino (In re Guarracino)*, 575 B.R. 298, 311 (Bankr. D.N.J. 2017) (collecting cases supporting both majority and minority positions and ruling that PACA creates a trust and fiduciary relationship satisfying § 523(a)(4)), *with CR Adventures LLC v. Hughes (In re Hughes)*, 609 B.R. 789, 801–02 (Bankr. N.D. Ill. 2019) (holding that a PACA Trust creates no fiduciary capacity under § 523(a)(4)). In addressing whether a claim arising from a fiduciary relationship created by another federal statute was dischargeable under § 523(a)(4), the Bankruptcy Appellate Panel for the First Circuit defined an express trust as one that includes "an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust relationship," *In re Fahey*, 482 B.R. at 687 (internal citation omitted), and a technical trust imposed by a statute where the statute must "(1) define the trust res, (2) spell out the trustee's fiduciary duties, and (3) impose a trust prior to and without reference to the wrong that created the debt," *id.* at 688 (quoting *In re Bologna*, 206 B.R. at 632) (considering trust created under ERISA); *see also In re Dyer*, 2018 WL 812993, at *5; *Matthews v. Nealon (In re Nealon)*, 532 B.R. 412, 422–23 (Bankr. D. Mass. 2015); *Emery v. Maggio (In re Maggio)*, No. 13-16257-JNF, 2015 WL 4540182, at *8 (Bankr. D. Mass. July 27, 2015).

9

In what the Defendant characterizes as a "waning" majority view, Def.'s Mot., at 2, some courts have analyzed a PACA Trust under these standards and have held that a PACA Trust meets the requirements for a technical trust under § 523(a)(4), *see, e.g.*, *In re Guarracino*, 575 B.R. at 311 ("This Court will follow the majority viewpoint that PACA establishes a [technical] trust."); *In re Parra*, 412 B.R. at 105 ("PACA trusts satisfy the requirements for a technical trust."); *see also Alliance Shippers, Inc. v. Choez (In re Choez)*, No. 15-45404, 2017 WL 5604109, at *14 (Bankr. E.D.N.Y. Nov. 20, 2017) (quoting *In re Parra*, 412 B.R. at 105).

In *In re Bartlett*, the bankruptcy court for the District of Massachusetts ruled that the statutory trust under PACA establishes a technical trust that "satisfies the fiduciary requirement of § 523(a)(4)."  397 B.R. at 620 (quoting *Hiller Cranberry*, 165 F.3d at 8–9 favorably, but recognizing that the First Circuit analyzed breach of fiduciary duty under PACA in an context outside of § 523(a)(4)).

Recently, the Eleventh Circuit Court of Appeals set out standards for a technical trust under § 523(a)(4).  *See In re Forrest*, 47 F.4th at 1238–41.  The court reviewed decisions from the Eleventh Circuit and other circuits and held that

> [f]irst, the [fiduciary] relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary or beneficiaries.  Second, the fiduciary relationship must define sufficient trust-like duties imposed on the trustee with respect to the trust res and beneficiaries to create a technical trust.  Based on our caselaw, the two most important trust-like duties, and the ones that we have held create a technical trust, are the duty to segregate trust assets and the duty to refrain from using trust assets for a non-trust purpose.  Third, the debtor must be acting in a fiduciary capacity before the act of fraud or defalcation creating the debt.

*Id*. at 1241 (internal citation omitted).

The first and third requirements identified by the Eleventh Circuit have been adopted by courts taking both the "majority" and "minority" positions.  *See e.g.*, *In re Bartlett*, 397 B.R. at 620 (adopting majority position); *In re Hughes*, 609 B.R. at 802 (adopting minority position).

The second requirement concerning "the duty to segregate trust assets and the duty to refrain from using trust assets for a non-trust purpose" has been adopted by courts that have ruled that a PACA Trust does not create a technical trust consistent with the minority position.  *Compare In re Hughes*, 609 B.R. at 797 (finding the "hallmarks of a trust include segregation of funds" (internal quotations omitted)), *Coosemans Miami, Inc. v. Arthur (In re Arthur)*, 589 B.R. 761, 768–69 (Bankr. S.D. Fla. 2018) (recognizing a segregation requirement as "clear indicia of a technical trust relationship" and as "a necessary element"), and *Cardile Bros. Mushroom Pkg, Inc. v. McCue (In re McCue)*, 324 B.R. 389, 392–93 (Bankr. M.D. Fla. 2005) ("Because a PACA res is not a segregated trust res, Plaintiffs cannot prove the existence of an express or technical trust."), *with Quality Food Prods., Inc. v. Bolanos*, No. 12 CV 7654, 2013 WL 7507846, at *3 (N.D. Ill. Sept. 16, 2013) (ruling that "segregation of funds is not a mandatory element" for § 523(a)(4) fiduciary relationship (internal quotations omitted)), *Michael Farms, Inc. v. Lundgren (In re Lundgren)*, 503 B.R. 717, 721 (Bankr. W.D. Wis. 2013) (recognizing that "trust assets are available for other uses by the buyer or receiver"), *In re Parra*, 412 B.R. at 105 ("segregation is not required so long as the trust res is identifiable" (quoting *General Produce, Inc. v. Tucker (In re Tucker)*, No. 06-50092, 2007 WL 1100482, at *4 (Bankr. M.D. Ga. Apr. 10, 2007), *abrogated by In re Forrest*, 47 F.4th 1229)), *and In re Snyder*, 184 B.R. 473, 475 (D. Md. 1995) ("segregation of funds is not a mandatory element of an express trust").

The Eleventh Circuit identified the importance of these two trust-like duties by referencing the Restatement (Third) of Trusts which defines a trustee's duty of loyalty to "administer the trust solely in the interest of the beneficiaries" and "keep the trust property . . . separate from other property not subject to the trust."  *In re Forrest*, 47 F.4th at 1241 (quoting Restatement (Third) of Trusts § 78(1) (2007)).  The court further observed that these narrower

11

standards would promote both the Bankruptcy Code's "fresh start" policy interests and maintain

PACA protections as a remedial statute. *See id.* at 1247. Even if § 523(a)(4) discharges unpaid

produce sellers' debt claims, these creditors under the PACA Trust could still "disgorge

payments made from the PACA Trust to third-party lenders" and enjoy "the highest priority in

bankruptcy proceedings." *Id.*

Generally, the Supreme Court and other courts have consistently employed a "strict and

narrow" interpretation of § 523(a)(4) fiduciary relationship in order to buttress the Bankruptcy

Code's "fresh start" policy for the honest but unfortunate debtors. *See Davis*, 293 U.S. at 334; *In

re Baylis*, 313 F.3d at 17. While not undertaking an analysis of the requirements for a technical

trust in determining that an individual is liable for breach of fiduciary duty under PACA, outside

the context of § 523, the First Circuit quoted favorably the following regarding the imposition of

a PACA Trust:

> An individual who is in the position to control the trust assets and who does not
> preserve them for the beneficiaries has breached a fiduciary duty, and is
> personally liable for that tortious act. . . .
>
> We recognize at the outset that a PACA trust in effect imposes liability on a
> trustee, whether a corporation or a controlling person of that corporation, who
> uses the trust assets for any purpose other than repayment of the supplier. This
> includes use of the proceeds from the sale of perishables for legitimate business
> expenditures, such as the payment of rent, payroll, or utilities. Proceeds from the
> sale of perishables subject to PACA receive special treatment in other respects as
> well.

*Hiller Cranberry*, 165 F.3d at 8–9 (quoting *Morris Okun, Inc.*, 814 F. Supp. at 348).

While *Hiller Cranberry* certainly addresses personal liability as a "fiduciary" under

PACA, the First Circuit has not addressed whether that "fiduciary duty" is sufficient to satisfy

the "fiduciary capacity" requirement of § 523(a)(4) or whether the fiduciary duty implied in

*Hiller Cranberry* arises from a technical trust. In *Hiller Cranberry*, the First Circuit reviewed a

determination of the likelihood of success of a claim for personal liability against an individual

under PACA.  That decision is not controlling precedent with respect to the issue in this case,

which requires an analysis of the source of that personal liability.  While I have carefully

considered the First Circuit's favorable quote of a court that found that personal liability under

PACA arises from breach of a "fiduciary duty," the standards required by § 523(a)(4) were not

before the First Circuit.  I have also considered the First Circuit's observation in dicta that the

Supreme Court's prior holding that the § 523(a)(4) exception for fiduciary capacity applies to

only express or technical trusts and not to equitable trusts may be "in doubt."  *In re Baylis*, 313

F.3d at 17 n.3.

       In considering the requirements for a technical trust imposed by a statute other than

PACA, the First Circuit Bankruptcy Appellate Panel required that the statute "(1) define the trust

res, (2) spell out the trustee's fiduciary duties, and (3) impose a trust prior to and without

reference to the wrong that created the debt."  *See In re Fahey*, 482 B.R. at 687–88; *see also In

re Bartlett*, 397 B.R. at 619 (citing *In re Bologna*, 206 B.R. at 632).  Relying on its precedent

regarding technical trusts, the Eleventh Circuit identified a trustee's duty of loyalty to

"administer the trust solely in the interest of the beneficiaries" and "keep the trust property . . .

separate from other property not subject to the trust" as the most significant requirements to

establish a technical trust as contemplated by § 523(a)(4).  *See In re Forrest*, 47 F.4th at 1241;

*see also In re Baylis*, 313 F.3d at 20 (stating in § 523(a)(4) defalcation action where fiduciary

capacity was undisputed that "the duty of loyalty is '[t]he most fundamental duty owed . . . the

duty of a trustee to administer the trust solely in the interest of the beneficiaries.'" (quoting 2A

A. Scott, The Law of Trusts § 170 (W.F. Fracher ed., 4th ed. 2001))).  While not inconsistent

with the requirements found by the First Circuit Bankruptcy Appellate Panel in another context,

the Eleventh Circuit formulation imposes stricter requirements in defining the duties imposed on

13

a trustee and identifying the trust res that appear not yet to have been applied in the First Circuit.

*See In re Bartlett*, 397 B.R. at 620 (applying same requirements later applied by the First Circuit

BAP in *Fahey*, "[t]his Court is in accord with . . . courts which have held that the PACA

statutory trust is one which satisfies the fiduciary requirement of § 523(a)(4).").

### B. The Failure to Pay an Obligation Subject to a PACA Trust Is Not a Fraud or Defalcation While Acting in a Fiduciary Capacity Under § 523(a)(4)

I find the reasoning of the Eleventh Circuit persuasive.  In the context the historical

"strict and narrow" interpretation of § 523(a)(4), the stricter requirements for the establishment

of a technical trust comport with the objectives of § 523(a)(4).  *See Davis*, 293 U.S. at 334 (strict

interpretation will prevent excessive findings of non-dischargeable debts and support the fresh

start objectives of the Code).  PACA does not sufficiently define or identify the trust res or

adequately impose trust-like duties on a trustee to establish a technical trust for purposes of §

523(a)(4) because PACA permits commingling of proceeds and use of proceeds for any purpose.

*See Royal Garden Produce, LLC v. Sanchez (In re Sanchez)*, No. 19BK32364, 2021 WL

5893993, at *7 (Bankr. N.D. Ill. Dec. 13, 2021).

PACA states that "a commission merchant, dealer, or broker" after receiving perishable

agricultural commodities must hold such produce "in trust for the benefit of all unpaid suppliers

or sellers of such commodities."  7 U.S.C. § 499e(c)(2).  The produce buyer and its responsible

parties serve as trustees, unpaid produce sellers are beneficiaries, and the trust res is all the

produce received, the products derived therefrom, and any receivables or proceeds of sale.  *See*

*In re Forrest*, 47 F.4th at 1242; *In re Bartlett*, 397 B.R. at 620.  However, PACA also provides

that "[t]rust assets are to be preserved as a nonsegregated 'floating' trust," and "[c]ommingling

of trust assets is contemplated."  7 C.F.R. § 46.46(b).  The PACA Trust "floats" and does not

remain segregated, such that a single trust exists for the benefit of all PACA produce sellers and

14

continues in effect until all PACA produce sellers are paid in full.  *See Tom Lange Co. v.*

*Kornblum & Co. (In re Kornblum & Co.)*, 81 F.3d 280, 286 (2d Cir. 1996).  In a PACA Trust,

the res is not defined or identifiable when segregation is not required and commingling of trust

asset is allowed, because "the seller does not continue to own his sold produce or the sale

proceeds, with the buyer having only legal title."  *In re Hughes,* 609 B.R. at 800.  A produce

buyer can use proceeds from any produce seller's trust assets to pay a different produce seller or

for other non-trust purposes, as long as the trust assets "are freely available to satisfy outstanding

obligations" to all produce sellers.  7 C.F.R. § 46.46(d)(1); *see In re Hughes,* 609 B.R. at 799.

Moreover, the produce buyer has "no obligation to track trust funds in and out," so that

unpaid produce sellers cannot identify or assert particular claims to their original trust assets.

*See In re McCue*, 324 B.R. at 392–93.  Where produce sellers' claims exceed the produce

buyer's available trust assets, unpaid sellers must share the same priority to the aggregate trust

assets on a pro rata basis.  *See In re Hughes*, 609 B.R. at 799–800.  Because produce sellers

cease to own or have specific claims to the sale proceeds under the nonsegregated PACA

"floating" trust, the PACA Trust fails to clearly define and identify the trust res.  *See id.*; 7

C.F.R. § 46.46(b).

As discussed by the Eleventh Circuit in *In re Forrest*, taking into account PACA

regulations, a PACA Trust does not require produce buyers to segregate trust assets, and the

absence of this requirement "implies that trust permits trust assets to be in the same account as

non-trust assets" and allows "the commingling of trust assets with non-trust assets."  *See* 47

F.4th at 1243 (rejecting creditor's argument that PACA's reference to "[c]ommingling of trust

assets" does not encompass non-trust assets).  In addition, the Eleventh Circuit found no duty to

refrain from using trust assets for a non-trust purpose because a produce buyer can use any

15

produce seller's trust assets for any purpose so long as the trust assets in aggregate "are freely

available to satisfy outstanding obligations" to all produce sellers. *See id.* at 1244 (quoting 7

C.F.R. § 46.46(d)(1)).

Because of these attributes, a PACA Trust more closely resembles a constructive or

resulting trust and can be viewed as providing a produce seller a mechanism to claim priority

over secured creditors and imposing personal liability for individuals who mismanage proceeds

of produce. *See id.* at 1245–46 (concluding that a PACA Trust resembles a constructive or

resulting trust); *In re Hughes*, 609 B.R. at 801 (PACA trust functions "as a collection device" to

assure "payment for the goods shipped to and sold by the purchaser." (internal citation and

quotation omitted)).

Courts have recognized the tension between § 523(a)(4) and PACA resulting from two

federal statutes with competing interests. *See, e.g.*, *Melon Acres, Inc. v. Villa (In re Villa)*, 625

B.R. 111, 118 (Bankr. N.D. Fla. 2021). As stated by the Eleventh Circuit:

> Allowing PACA debtors to be freed from personal liability for their debts through
> bankruptcy discharge promotes the overarching goal of the Bankruptcy Code of
> providing debtors with a fresh start. At the same time, PACA still provides
> significant benefits to unpaid produce sellers as those creditors are entitled to the
> highest priority in a Chapter 7 liquidation. Our decision will not erode the
> protections of PACA and will strike a balance between these two statutes.

*In re Forrest*, 47 F.4th at 1246.

This is a close call, and cases holding to the contrary are well-reasoned and, in this

Circuit, can be supported by broad language used in dicta by the First Circuit. *See In re Bartlett*,

397 B.R. at 620 (comparing favorably *Hiller Cranberry*, 165 F.3d at 8–9); *In re Baylis*, 313 F.3d

at 17 n.3 (noting that Supreme Court precedent that the § 523(a)(4) exception for fiduciary

capacity only to express trusts and not to equitable trusts may be in doubt). I am persuaded that

the better approach is to strictly interpret the requirements for a technical trust that would

establish a fiduciary capacity sufficient to meet the requirements of § 523(a)(4).  I have found no legislative history suggesting that Congress intended personal liability under PACA to be nondischargeable in bankruptcy.  The evolution of PACA indicates that Congress primarily intended to protect produce sellers from the liens of secured creditors and provide personal liability for responsible parties when PACA debts were not paid.

## IV.    CONCLUSION

For the reasons above, there exists no disputed issue of fact with respect to whether the Plaintiffs can demonstrate that Kaloyanides committed a "defalcation" while "acting in fiduciary capacity" for the purpose of § 523(a)(4) by failing to pay amounts owed to Plaintiffs as to which a PACA Trust was established.  Consequently, I will enter summary judgment in favor of Kaloyanides on Count IV.

By the Court,

Dated:  April 15, 2024

_____
Christopher J. Panos
United States Bankruptcy Judge